1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRIENDS OF HOPE VALLEY, a
     California public benefit corporation,

11
                 Plaintiff,              No. 2:09-cv-02866 JAM KJN
12
            v.                           ORDER
13

14   FREDERICK COMPANY, a/k/a
     DRESSLER COMPANY, a/k/a FRED H.
15   DRESSLER COMPANY, a Nevada
     Partnership,
16
                 Defendant.
17   _____/

18            Presently before the court[1] is defendant's motion to compel the production of

19   documents that plaintiff withheld on the grounds that the documents and communications are

20   protected from disclosure by the work product doctrine, the attorney-client privilege, or both.[2]

21   (Dkt. No. 14.)  The parties previously filed a Joint Statement re Discovery Disagreement ("Joint

22   Statement").  (Dkt. No. 20.)

23   _____

24        [1]  This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).
25
          [2]  The parties' discovery completion deadline is August 6, 2010. (Status /Pretrial Scheduling)
26   Order at 3, Dkt. No. 12.)

                                                  1

1    The court heard this matter on its law and motion calendar on July 15, 2010.

2  Attorney Charles Cordes appeared on behalf of defendant.  Attorney Matthew Zinn appeared on

3  behalf of plaintiff.  For the reasons that follow, the court will grant defendant's motion, in part,

4  and deny it, in part, as explained below.

5  I.    BACKGROUND

6    In this diversity jurisdiction action, plaintiff seeks quiet title to an implied-in-fact

7  public recreational easement over property owned by defendant, which is a family partnership

8  that operates cattle grazing and herding operations in Pleasant Valley in Alpine County,

9  California.  Plaintiff, a non-profit public benefit corporation, contends that prior to March 1972,

10  before the effective date of California Civil Code § 1009, members of the public traversed or

11  recreated on defendant's property in a manner sufficient to create a public recreational easement

12  implied-in-law under the common law, as recognized in Gion v. City of Santa Cruz, 2 Cal. 3d 29,

13  465 P.2d 50 (1970).  The parties state that the legislation enacting Section 1009, which

14  prospectively barred claims of implied dedication of public recreational easements, did not affect

15  such easements perfected prior to the legislation's March 1972 effective date.  As a result, the

16  parties state that "facts regarding who accessed Pleasant Valley, when they were there, what they

17  did there, whether they had or sought permission from the landowner, the landowner's efforts to

18  prevent unpermitted use, and the overall numbers of persons accessing Pleasant Valley and the

19  nature of their activities, will be vital to a fair adjudication of the matter." (Joint Statement at

20  3:21-25.)

21    The present dispute centers on defendant's First Set of Requests for Production of

22  Documents ("RFPs"), which requested the production of documents relevant to the alleged

23  public use of Pleasant Valley before and after March 1972.  (Joint Statement, Ex. 2.)  Plaintiff

24  produced some responsive documents and withheld others.  The parties met and conferred

25  regarding the RFPs, and plaintiff produced and supplemented privilege logs reflecting documents

26  withheld on the basis of the attorney-client privilege, the work product doctrine, or both

2

1  protections.  (Joint Statement, Ex. 4.)  The undersigned will make reference to "Privilege Log

2  One" and "Privilege Log Two" in this order.

3  　　　　Following the parties' meet-and-confer efforts (Joint Statement, Exs. 5-10), two

4  main disputes remain.

5  　　　　First, the parties dispute whether defendant is entitled to discover certain witness

6  questionnaires that are described in Privilege Log One as "Pleasant Valley Trail Witness

7  Questionnaire" or "Questionnaire for Pleasant Valley Trail Use."  These documents are reflected

8  in Privilege Log One at entries 9-11 and 18-29. (Joint Statement, Ex. 4, Doc. No. 20-1 at 30-32.)

9  In short, plaintiff contends that these questionnaires are protected from disclosure based on the

10  work product doctrine.  Plaintiff argues that the form of questionnaire was prepared by plaintiff's

11  counsel, and that plaintiff's board members administered these questionnaires to third parties at

12  counsel's request and with instructions from counsel.  The questionnaires were not given to the

13  witnesses questioned, and, generally speaking, the board member who administered the

14  questionnaire recorded the witness's answers on the form of questionnaire.  Generally, defendant

15  argues that these documents are not subject to work product protection at all and, even if they

16  are, defendant has made the showing required under Federal Rule of Civil Procedure 26(b)(3)(ii)

17  to warrant disclosure of these documents and/or plaintiff's person-most-knowledgeable, John

18  Barr, waived the work product protection during his deposition.

19  　　　　Second, the parties dispute whether defendant is entitled to discover several

20  communications, most of which appear to be in e-mail form, which were transmitted among non-

21  attorneys.  Plaintiff withheld these documents claiming protection as a result of the work

22  product doctrine, the attorney-client privilege, or both.  These communications are reflected in

23  ////

24  ////

25  ////

26  ////

1    Privilege Log One at entries 13 through 17, and Privilege Log Two at entries 1-3, 5-8, 13-29,[3]

2    33-38,[4] and 40.  (Joint Statement, Ex. 4, Doc. No. 20-1 at 31, 33-36.)

3            In the meet-and-confer process, the parties disputed whether plaintiff could

4    withhold a communication between non-attorneys where the communication was allegedly in

5    furtherance of forming an intra-organization response to an attorney's inquiry that was within the

6    scope of the representation.  (See, e.g., Joint Statement, Ex. 6.)  In the present motion, however,

7    the parties' dispute centers on the adequacy of plaintiff's privilege logs and does not reach the

8    substantive privilege dispute.  Defendant contends that plaintiff's privilege logs are deficient

9    because it is not possible to adequately assess the claims of privilege from the information

10   provided therein.  Defendant seeks disclosure of those documents or, alternatively, *in camera*

11   review by the court.  During the meet-and-confer process, plaintiff provided defendant with

12   organizational titles or positions of some persons identified in the privilege logs via separate

13   letter (Joint Statement, Ex. 6), and those persons are listed as either officers, board members, or

14   "members" of plaintiff; however, per the court's review, the following relevant names remain

15   unexplained: Tom Palmer, Joan Wright, and Sam LeBarron.

16   II.    DISCUSSION

17          A.    The Third-Party Witness Questionnaires

18            Defendant moves to compel production of the documents described in plaintiff's

19   privilege log as "Pleasant Valley Trail Witness Questionnaire" or "Questionnaire for Pleasant

20   Valley Trail Use."  Plaintiff withheld these questionnaires on the grounds that the form of the

21   ////

22

23          [3] Although defendant contends that it is entitled to discovery of entries 30 and 31 in Privilege
     Log Two, plaintiff appears to have produced those documents in unredacted form. (Joint Statement,
24   Ex. 8.)

25          [4] Plaintiff contends that it has produced the documents reflected at entries 33-38. (Joint
     Statement at 24 n.8.)  However, plaintiff produced heavily redacted portions of those documents,
26   not unredacted versions. (Joint Statement, Ex. 10.)

1   questionnaire and responses recorded by plaintiff's board members thereon are either opinion

2   work product or ordinary work product not subject to disclosure.[5]

3              Regarding work product and trial preparation materials, Federal Rule of Civil

4   Procedure 26(b)(3)(A) provides, in relevant part:

5        Ordinarily, a party may not discover documents and tangible things that
         are prepared in anticipation of litigation or for trial by or for another party
6        or its representative (including the other party's attorney, consultant,
         surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those
7        materials may be discovered if:

8        (I) they are otherwise discoverable under Rule 26(b)(1); and

9        (ii) the party shows that it has substantial need for the materials to prepare
         its case and cannot, without undue hardship, obtain their substantial
10       equivalent by other means.

11   "[T]o qualify for protection against discovery under Rule 26(b)(3), material must have two

12   characteristics: (1) it must be prepared in anticipation of litigation or for trial; and (2) it must be

13   prepared by or for another party or by or for that other party's representative."[6]  Green v. Baca,

14   226 F.R.D. 624, 652 (C.D. Cal. 2005) (citing In re Grand Jury Subpoena (Mark Torf/Torf

15   Environmental Management), 357 F.3d 900, 907 (9th Cir. 2004)).  "There are two types of work

16   product, ordinary work product and opinion work product."  Id.  The Eighth Circuit Court of

17   Appeals has explained:

18       Opinion work product includes counsel's mental impressions, conclusions,
         opinions or legal theories.  Ordinary work product is not discoverable
19       unless the party seeking discovery has a substantial need for the materials
         and the party cannot obtain the substantial equivalent of the materials by
20       other means.  In contrast, opinion work product enjoys almost absolute
         immunity and can be discovered only in very rare and extraordinary
21       circumstances, such as when the material demonstrates that an attorney
         engaged in illegal conduct or fraud.

22

23   ////

24
     _____

25       [5]  Plaintiff's Privilege Log One reflects the names of the third parties questioned.

26       [6]  It is undisputed that the questionnaires here were prepared in anticipation of litigation by
     plaintiff's representatives.

1   Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (citation omitted); see also

2   Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (holding that

3   "opinion work product may be discovered and admitted when mental impressions are at issue in

4   a case and the need for the material is compelling"); Green, 226 F.R.D. at 652 ("Fact work

5   product is discoverable only upon a showing of substantial need and an inability to secure a

6   substantial equivalent by alternate means without undue hardship.") (citing McKenzie v.

7   McCormick, 27 F.3d 1415, 1420 (9th Cir. 1994)).  The work product doctrine applies not only to

8   documents prepared by an attorney, but to documents created by investigators or agents working

9   for attorneys in anticipation of litigation.[7]  See United States v. Nobles, 422 U.S. 225, 238-39

10  (1975); In re Grand Jury Subpoena, 357 F.3d at 907.

11          Defendant contends that it is entitled to the questionnaires because they are akin to

12  verbatim, third-party witness statements that courts have held to be discoverable.  See Dobbs v.

13  Lamonts Apparel, Inc., 155 F.R.D. 650, 652-53 (D. Alaska 1994) (concluding that factual

14  information contained in verbatim, third-party witness statements, completed by those third

15  parties and reflecting the third parties' knowledge, was discoverable); cf. Ford Motor Co. v.

16  Edgewood Props., Inc., 257 F.R.D 418, 422-23 (D.N.J. 2009) (concluding that affidavit of party

17  who had previously settled in the litigation, which was procured by an attorney but contained "a

18  recitation of facts within the ken of the witness and [did] not contain the mental impressions or

19  legal theories of counsel" was subject to disclosure).  Defendant relies, in part, on the testimony

20  of John Barr, plaintiff's vice president who administered some of the questionnaires, that he read

21  the questions over the phone to the third parties and attempted to record their statements

22  verbatim to the extent possible.  (Barr Dep. at 17:19-25 and 19:2-21, Joint Statement, Ex. 12.)

23          Plaintiff counters that the questionnaires are the equivalent of an attorney's notes

24  of interviews of third-party witnesses, which have been held to be protected opinion work

25

26      [7]  Defendant has not argued that plaintiff's board members are not plaintiff's or plaintiff's
counsel's "agents" for the purpose of assessing work product protection.

1  product.  See, e.g., O'Connor v. Boeing N. Am., 216 F.R.D. 640, 643 (C.D. Cal. 2003); see also

2  SEC v. Talbot, No. CV044556MMM(PLAX), 2005 WL 1213797, at *1 (C.D. Cal. Apr. 21,

3  2005) (unpublished) (concluding a memorandum of an attorney's interview with a witness was

4  protected work product notwithstanding the presence of factual information).  It contends that the

5  entirety of the questionnaires and responses reflect counsel's mental impressions, conclusions,

6  opinions, and legal theories.  Plaintiff argues that the questionnaires do not reflect discoverable

7  verbatim witness statements because plaintiff's board members administered the questions orally,

8  the third parties did not complete or review the questionnaires, the questionnaires contain

9  questions prepared by counsel that reflected a roadmap of plaintiff's litigation strategy,[8] and

10  instructions throughout the form of the questionnaire prompted interviewers to provide their own

11  impressions of the witnesses including those related to witness credibility.  Plaintiff does not

12  dispute, however, that at least some portions of the third-parties' statements were written down

13  verbatim or near-verbatim.  (Joint Statement at 17:10-18.)

14          The questionnaires here contain, on plaintiff's counsel's representations, both

15  near-verbatim recordings of facts offered by third parties and the mental impressions and

16  conclusions of the interviewers.  These questionnaires do not fit squarely within the cases cited

17  by the parties.  For example, the questionnaires are distinguishable from cases like Dobbs

18  because the questionnaire was not completed by the third-party witness; it was completed by

19  plaintiff's representative and the third party never saw the questionnaire.  The questionnaires, or

20  at least parts of them, are also somewhat distinguishable from cases like O'Connor because there

21  is evidence in the record that the questioners attempted to record verbatim responses if possible.

22          Having considered the parties' submissions and the cases cited therein, the

23  undersigned concludes that the particular questionnaires and responses in this case are protected

24

25          [8] At the hearing, plaintiff's counsel represented that each questionnaire is about 15 to 20
   pages long.  And although plaintiff's counsel was less sure about the following, he represented that
26  each questionnaire contains approximately 20 to 30 questions, with subpart questions.

1   by the work product doctrine.  Under a plain reading of Rule 26(b)(3)(A), these questionnaires

2   meet the definition of work product material because they were clearly prepared in anticipation

3   of litigation by or for a party or its representative.  Fed. R. Civ. P. 26(b)(3)(A); see In re Grand

4   Jury Subpoena, 357 F.3d at 907.

5                    To the extent that the questionnaires contain plaintiff's board members' or

6   counsel's mental impressions, conclusions, opinions, or legal theories concerning the litigation,

7   that material is protected by the work product doctrine, and defendant has not made the required

8   showing to warrant disclosure of such material.  Specifically, plaintiff's counsel's instructions to

9   the questioning board members contained in the questionnaires are not subject to disclosure.

10  Plaintiff's board members' mental impressions, conclusions, opinions, or legal theories

11  concerning the litigation are also not subject to disclosure.

12                   What remains are the questions asked and the factual responses provided by the

13  third-party witnesses.  The parties have vigorously disputed whether this material constitutes

14  ordinary work product, and whether defendant has shown: (1) "substantial need" for the materials

15  and (2) that it cannot, without undue hardship, obtain a substantial equivalent.  The undersigned

16  finds that defendant has not made a showing that it has a substantial need for this material.  The

17  questionnaires here are sufficiently distinguishable from the verbatim questionnaires prepared by

18  the third parties in Dobbs such that Dobb's "per se" substantial need standard is inapplicable

19  here.  155 F.R.D. at 653 ("It is the view of this court that a verbatim witness statement, even one

20  solicited by counsel, is *per se* necessary to the full and efficient development of a case.").

21  Moreover, defendant's portion of the Joint Statement states only that "[t]hese pure fact

22  statements will undoubtedly help to narrow and focus which witnesses may be included within

23  the nine remaining depositions Defendant may take." (Joint Statement at 9:5-7.)  This assertion

24  alone does not constitute a "substantial need" sufficient to disclose work product protected

25  material, especially in light of plaintiff's representation that it will "readily agree to increase the

26  number of depositions Defendant may take." (Joint Statement at 21 n.3.)  At the hearing,

8

1   defendant again struggled to identify a particular substantial need for the questionnaires other

2   than disclosure would make defendant's work easier or less expensive.[9]  Defendant's

3   convenience is not sufficient to warrant disclosure of protected materials, as disclosure for this

4   reason would seem to defeat the primary purposes of the work product doctrine.  See, e.g.,

5   Holmgren, 976 F.2d at ("The primary purpose of the work product rule is to prevent exploitation

6   of a party's efforts in preparing for litigation" (citation and quotation marks omitted).);

7   Castaneda v. Burger King Corp., 259 F.R.D. 194, 196 (N.D. Cal. 2009) ("The purpose of the

8   work product doctrine is the promotion of the adversary system by safeguarding the fruits of an

9   attorney's trial preparations from the opponent" (citation and quotation marks omitted).).

10          This discovery dispute also raises the question of whether plaintiff waived work

11  product protection of the questionnaires through the deposition testimony of John Barr, its vice

12  president and deponent designated as a person most knowledgeable.  Work product protection is

13  subject to waiver, Nobles, 422 U.S. at 239, but "[d]isclosure to a third party does not

14  automatically waive the protection of the work product doctrine." U.S. EEOC v. ABM Indus.

15  Inc., 261 F.R.D. 503, 512 (E.D. Cal. 2009).  Instead, "any analysis of work product waiver issues

16  must focus on whether the subject disclosures increased the likelihood that a current or potential

17  opponent in litigation would gain access to the disputed documents." Id.  And even if there is a

18  waiver, "[t]he work product privilege is also only waived 'with respect to matters covered in . . .

19  testimony.'" Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting Nobles,

20  422 U.S. at 239-40) (modification in original).

21          Here, nothing in the record suggests that plaintiff disseminated the actual, physical

22  questionnaires to third parties.  However, Mr. Barr was asked several questions about the

23  questionnaires during his deposition and revealed some of the questions contained therein and

24  some of the responses provided by some of the interviewed third parties.  He also answered

25

26          [9] Plaintiff also represented in the Joint Statement and at the hearing that neither party would be able to make use of the questionnaires at trial because the questionnaires contain double-hearsay.

several questions stating that he would have to refer to his notes, i.e., the questionnaires, to be

able to answer the question asked.  In addition, plaintiff's counsel did not object to these lines of

questioning during the deposition.  The parties briefed the issue of waiver in all-or-nothing terms,

but, at oral argument, plaintiff represented that to the extent there was a waiver of work product

protection, it was limited.  Thus, there is a question regarding whether a waiver occurred, and the

scope of any such waiver.   The undersigned does not resolve this question in this order for two

reasons.  First, the issue was insufficiently briefed in the Joint Statement.  Second, more

significantly, plaintiff has agreed to a compromise solution that obviates the need to presently

address the waiver issue.

During the hearing, the court suggested that, as a compromise solution, plaintiff

prepare and provide defendant with a document summarizing the factual information contained

in the questionnaires at issue.  Such a chart would permit defendant access to the factual

information obtained from the third party witnesses so that it could better determine which

witnesses to contact or depose, and at the same time protect plaintiff's work product.  It would

also foster efficient and cost-effective fact-gathering, at least for defendant.  Plaintiff's counsel

readily agreed to prepare such a document so long as plaintiff would not be required to provide

the questions contained in the questionnaires; plaintiff's counsel represented that the actual

questions provide a roadmap of plaintiff's litigation strategy.  Defendant's counsel strongly

resisted the court's suggestion, but his main objection appeared to be, in essence, that he does not

trust plaintiff's counsel to be forthcoming in preparing such a summary chart or table.

The undersigned will order plaintiff to produce a summary chart or table.  This

document shall include, at a minimum, the following information: (1) the name, telephone

number, addresses and e-mail addresses, to the extent each of those items is known to plaintiff or

plaintiff's counsel, of every third party individual contacted with respect to administration and

completion of the questionnaire; (2) the name and name of position relative to plaintiff (e.g.,

board member, vice president, member) of the individual(s) who administered the questionnaire

1  to the particular third party; (3) the date that the questionnaire was administered; (4) a summary

2  of the facts related by the third party that were recorded on the questionnaire by plaintiff's

3  representative.  The summary document need not contain the actual questions contained in the

4  questionnaire.  However, plaintiff is cautioned that the factual information included must be

5  presented in some comprehensible narrative format, as opposed to a collection of sentence

6  fragments pulled from the questionnaires without context.  Moreover, to assuage defendant's

7  concerns regarding the completeness of the summary document, and in supplementation of

8  plaintiff's counsel's obligations under the Federal Rules and as an officer of the court, plaintiff's

9  counsel shall sign the document and include an attestation under penalty of perjury that plaintiff

10  has made best efforts to include all of the factual information contained in the questionnaires.

11  Plaintiff shall also lodge the summary table with the court.

12              Accordingly, the undersigned will deny defendant's motion to compel to the

13  extent that it seeks disclosure of the questionnaires.  However, this denial is without prejudice to

14  refiling the motion to compel should the compromise solution prove unworkable.

15          B.      Adequacy of the Privilege Logs

16              Defendant also argues that plaintiff's privilege logs are deficient because

17  defendant, and the court, cannot assess the claim of privilege from the limited information

18  provided.  (Joint Statement at 12-14, 32-33.)  As opposed to its apparent position in the meet-

19  and-confer correspondence, defendant is not substantively assailing plaintiff's claim of privilege

20  or work product protection; it only argues that the privilege logs are so deficient that disclosure

21  or *in camera* review is required.  Plaintiff counters that its privilege logs and correspondence

22  sufficiently establish its claim of privilege or protection from disclosure and that, if the privilege

23  logs were deficient, the appropriate remedy would be to order plaintiff to produce augmented

24  privilege logs.  (Id. at 24-27.)

25              Federal Rule of Civil Procedure 26(b)(5) provides that "[w]hen a party withholds

26  information otherwise discoverable by claiming that the information is privileged or subject to

1    protection as trial-preparation material, the party must: . . . (i) expressly make the claim; and . . .

2    (ii) describe the nature of the documents, communications, or tangible things not produced or

3    disclosed . . . in a manner that, without revealing information itself privileged or protected, will

4    enable other parties to assess the claim."  The party asserting the privilege or protection from

5    disclosure bears the burden of proving the applicability of the privilege or protection to a given

6    set of documents or communications.  See, e.g., In Re Grand Jury Investigation (The

7    Corporation), 974 F.2d 1068, 1070 (9th Cir. 1992); Kandel v. Brother Int'l Corp., 683 F. Supp.

8    2d 1076, 1084 (C.D. Cal. 2010).  A party's "[f]ailure to provide sufficient information may

9    constitute a waiver of the privilege."  Ramirez v. County of L.A., 231 F.R.D. 407, 410 (C.D. Cal.

10   2005).

11            One common method of expressing a claim of privilege or other protection from

12   disclosure is use of a privilege log.  See, e.g., In Re Grand Jury Investigation, 974 F.2d at 1071.

13   A judge of this court has stated that "[t]he requisite detail for inclusion in a privilege log consists

14   of [1] a description of responsive material withheld, [2] the identity and position of its author,

15   [3] the date it was written, [4] the identity and position of all addressees and recipients, [5] the

16   material's present location, [6] and specific reasons for its being withheld, including the privilege

17   invoked and grounds thereof." United States v. Union Pac. R.R. Co., No. , at *3 (E.D. Cal.

18   May 23, 2007) (unpublished) (citing United States v. Constr. Prods. Research, Inc., 73 F.3d 464,

19   473 (2d Cir. 1996)).[10]  However, whether the requisite information is provided in a particular

20   format is not dispositive.  Id. at *4.

21            Here, plaintiff's privilege logs are deficient because they do not permit defendant

22   or the court to adequately assess the claim of privilege.  First, it is not clear from the entries at

23

24        [10]  The Ninth Circuit Court of Appeals previously cited with approval a privilege log that
     "identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or
25   entities shown on the document to have received or sent the document, (d) all persons or entities
     known to have been furnished the document or informed of its substance, and (e) the date the
26   document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d at 1071.

1   issue who are all of the named individuals.  And although plaintiff's meet and confer letter of

2   April 7, 2010 (Joint Statement, Ex. 6), provides the organizational positions of most of the

3   individuals named in the privilege logs, no information is provided regarding the following

4   individuals: Tom Palmer, Joan Wright and Sam LeBarron.  In addition, one entry is missing

5   transmittal information; entry 17 on Privilege Log One offers no information about the

6   sender/creator and recipient of the transmittal letter identified.

7           Second, and more importantly, the information provided by plaintiff in the

8   "Description and/or Subject (for correspondence)" column of the privilege logs provides, in most

9   cases, very little information that would permit the court or defendant to assess why these

10  communications among non-attorneys is subject to the attorney-client privilege or work product

11  protection.  Plaintiff appears to have just copied the subject line from the e-mail or letter

12  withheld.  For example, the information provided for entries 13, 14, 15 and 16 in Privilege Log

13  One are, respectively: "PV Trail"; "Re: Frustrating"; "PV"; and "pvt."  This is patently deficient.

14  The entries in Privilege Log two are largely of similar quality.  The undersigned is unpersuaded

15  by plaintiff's argument that the provision of any more detail would necessarily reveal the

16  privileged or protected information.

17          One of plaintiff's meet-and-confer letters explains that all of these non-attorney

18  communications "relate directly to forming a response to a query provided by an attorney or

19  precede and relate to forming a communication to an attorney."  (Joint Statement, Ex. 6 at 3, Ex.

20  8 at 2.)  However, defendant and the court should not be obligated to take plaintiff's blanket

21  assertion at face value as to all the documents withheld.  This is true especially where plaintiff

22  has filed no declarations explaining the privileged nature of the communications and the

23  descriptions of the documents do not suggest that the communications were in response to an

24  attorney query or furtherance of forming a response to such a query.  In addition, several of the

25  communications—entry 13 in Privilege Log One and entries 5, 6, 7, 13, 14, 17, 22, 26, 27, 28,

26  33, 34, 35, 36, 37 and 38 in Privilege Log Two—are between plaintiff's "members" and current

1    board members or officers.  It is unclear why these communications involving ordinary

2    "members" would fall within the attorney-client privilege based on the information provided by

3    plaintiff.

4              Simply put, and as discussed at the hearing on defendant's motion, plaintiff must

5    provide more detail in its privilege logs.  Accordingly, the court will order plaintiff to revise or

6    augment its privilege logs so that the court and defendant can adequately assess the claims of

7    protection from disclosure.  Although plaintiff's counsel obtained clarification at the hearing

8    regarding how it can cure the deficiencies in the privilege logs, the undersigned notes the

9    following non-exhaustive list of curative measures.  First, plaintiff's privilege logs shall provide

10   all of the information in the columns provided in the privilege log.  Second, the privilege log

11   shall reveal the identity and position of all senders/creators and addressees/recipients.  It would

12   be helpful and efficient if this information was contained in a legend in the privilege log itself,

13   rather than being scattered in meet-and-confer letters.  Third, and most importantly, plaintiff shall

14   provide a description of each communication or document withheld with sufficient detail that

15   defendant can readily assess the claim of privilege.  Although plaintiff is not required to provide

16   information about "strategy" or the detailed substance of the subject communications, it must

17   provide a description of the general topic that is detailed enough that defendant can ascertain

18   whether the communication is truly privileged.  This is especially important where the

19   communications are among non-attorneys and it is entirely unclear from the present descriptions

20   that these communications were in furtherance of an attorney-client communication or in

21   response to a query by plaintiff's attorney.  The undersigned is confident that plaintiff's counsel

22   can achieve this balance.  At this point, the court does not find it necessary or appropriate to

23   conduct an *in camera* review or order disclosure of the documents, as requested by defendant.

24   ////

25   ////

26   ////

14

III.    CONCLUSION

        For the foregoing reasons, IT IS HEREBY ORDERED that:

        1.      Defendant's motion to compel (Dkt. No. 14) is granted in part.

        2.      On or before August 2, 2010, plaintiff shall produce to defendant, and lodge with the court, a document (e.g., chart or table) summarizing the factual information contained in the third-party witness questionnaires at issue, as described above.

        3.      On or before August 2, 2010, plaintiff shall provide defendant with revised privilege logs, as discussed above, that permit defendant and the court to adequately assess plaintiff's claims of privilege or protection from disclosure. *In addition* to supplementing the privilege logs as described above, plaintiff may provide defendant with declarations substantiating the claim of privilege or protection from disclosure with respect to the communications among non-attorneys. This portion of the order pertains to the following entries: entries 13 through 17 in Privilege Log One, and entries 1-3, 5-8, 13-29, 33-38 and 40 in Privilege Log Two.

        IT IS SO ORDERED.

DATED: July 19, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

KJN:nkd

15